UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X

YOJANI BATISTA,

                Plaintiff,

        v.

C.P. REALTY CO., L.L.C., RGN REALTY SERVICES INC., APRIL REALTY SERVICES INC., JOSEPH YASGUR, and PHILIP ROTH,

                Defendants.

**Civ. 18-1838**

**COMPLAINT**

**JURY TRIAL DEMANDED**

------------------------------------------ X

Plaintiff Yojani Batista ("Plaintiff"), by his attorneys, The Legal Aid Society and White & Case LLP, brings this action against defendants C.P. Realty Co., L.L.C., RGN Realty Services Inc., April Realty Services Inc., Joseph Yasgur, and Philip Roth, and alleges on information and belief the following:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action to recover damages and other relief for violations of federal and state labor laws and common law arising out of his employment with C.P. Realty Co., L.L.C. ("C.P. Realty"), the owner of the residential apartment buildings located at 3288 Perry Avenue and 3296 Perry Avenue in the County of Bronx, New York (the "Buildings"); RGN Realty Services Inc. ("RGN"); April Realty Services Inc. ("April Realty"); Joseph Yasgur ("Mr. Yasgur"); and Philip Roth ("Mr. Roth") (together "Defendants").

1

2.     Plaintiff began his employment with Defendants in or about December 2010 as the superintendent of the Buildings.  After years of not being paid proper wages, in or about December 2016, Plaintiff complained to Defendants about not being properly paid.  In response, C.P. Realty and Mr. Yasgur gave Plaintiff notice of termination of his employment and commenced eviction proceedings against him to regain the apartment in which Plaintiff resides and has occupied pursuant to his employment as a superintendent (the "basement apartment").  However, despite such purported termination, Defendants continue to employ Plaintiff, and Plaintiff continues to work at the Buildings and perform his work as the superintendent.  To date, RGN continues to pay Plaintiff a weekly wage of $220.00 per week, an amount below both the federal and New York state minimum wage laws.

3.     During the entire period of Plaintiff's employment with Defendants (the "relevant time period"), Defendants violated numerous provisions of the Fair Labor Standards Act ("FLSA") and/or the New York Labor Law ("NYLL") by (a) failing to pay Plaintiff the proper minimum wage; (b) failing to pay Plaintiff the proper overtime premium for all hours worked beyond 40 in a work week; (c) retaliating against Plaintiff when he complained about not being paid in accordance with the law; (d) failing to provide legally-compliant pay stubs to Plaintiff; and (e) illegally deducting from Plaintiff's wages.

4.     In addition, Defendants failed to pay Plaintiff for numerous items of independent contract work, labor and services which were agreed to be separate and apart from his employment as superintendent ("Projects").

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the FLSA, 29 U.S.C. § 216, and 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's New York state law claims pursuant to 28 U.S.C. § 1367 because those claims are so closely related to Plaintiff's claims under the FLSA that they form part of the same case or controversy.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in such District.

## PARTIES

8. Plaintiff Yojani Batista is an individual who lives at 3288 Perry Avenue in the County of Bronx, New York within the Southern District of New York. During the relevant time period, Plaintiff lived in the County of Bronx, New York within the Southern District of New York. During the relevant time period, Plaintiff was employed as the superintendent of the Buildings, and performed Projects for Defendants.

9. Defendant C.P. Realty is a corporation incorporated in the State of New York, located at 109 Montgomery Avenue, Suite 102, Scarsdale, New York, County of Westchester within the Southern District of New York. C.P. Realty owns the Buildings. On information and belief, C.P. Realty has gross sales of over $500,000 a year and used goods produced in interstate commerce. During the relevant time period, Plaintiff performed work for C.P. Realty.

10. Defendant RGN is a corporation incorporated in the State of New York, located at 109 Montgomery Avenue, Suite 102, Scarsdale, New York, County of Westchester within the Southern District of New York. Within the relevant time period, from about December 2015 to date, RGN employed Plaintiff and paid him for his work at the Buildings. On information and belief, RGN has gross sales of over $500,000 a year and used goods produced in interstate commerce.

11. Defendant April Realty is a corporation incorporated in the State of New York, located at 825 East 233rd Street, County of Bronx, New York within the Southern District of New York. Within the relevant time period, from the beginning of Plaintiff's employment with Defendants to on or about December 2015, April Realty employed Plaintiff and paid him for his work at the Buildings. On information and belief, April Realty has gross sales of over $500,000 a year and used goods produced in interstate commerce.

12. Defendant Mr. Yasgur is and at all times relevant to this action was an officer, director, and/or owner of C.P. Realty and April Realty. In this role and during the relevant time period, Mr. Yasgur had the power to and did direct the terms and conditions of Plaintiff's employment.

13. Defendant Mr. Roth is and at all times relevant to this action was an agent of C.P. Realty. In this role and during the relevant time period, Mr. Roth had the power to and did direct the terms and conditions of Plaintiff's employment.

14. During the relevant time period, C.P. Realty and Messrs. Yasgur and Roth jointly employed Plaintiff.

15. During the relevant time period, from the beginning of Plaintiff's employment to about December 2015, April Realty, C.P. Realty and Messrs. Yasgur and Roth jointly employed Plaintiff.

16. During the relevant time period, from about December 2015 to date, RGN, C.P. Realty and Messrs. Yasgur and Roth jointly employed Plaintiff.

## FACTS

**Background; Plaintiff's Work**

17. In or about December 2010, Defendants hired Plaintiff to serve as the superintendent for 3288 - 96 Perry Avenue, County of Bronx, New York 10467. Each building -

3288 and 3296 - has 30 units, and the buildings are linked together by a common lobby. Plaintiff is superintendent for all 60 units.

18. Plaintiff's work as superintendent includes but is not limited to maintaining and monitoring heating, plumbing, and electrical systems of the Buildings; managing waste disposal; cleaning common areas and elevators; ensuring that the Buildings are in compliance with all relevant maintenance and sanitation regulations under New York City laws; and responding to tenant requests for repairs in and around residential areas, including handling emergency requests any time of the day or night.

19. Throughout the relevant time period, Plaintiff has usually worked at least 63.25 hours per week.

20. On Mondays, Plaintiff typically works from 7:00 A.M. to 8:30 P.M. He typically takes a 15 minute break in the morning, a 40 minute break in the afternoon, and a 30 minute break in the evening.

21. On Tuesdays and Thursdays, Plaintiff typically works from 7:00 A.M. to 5:00 P.M. He typically takes a 15 minute break in the morning and a 40 minute break in the afternoon.

22. On Wednesdays and Fridays, Plaintiff typically works from 7:00 A.M. to 7:30 P.M. He typically takes a 15 minute break in the morning, a 40 minute break in the afternoon, and a 30 minute break in the evening.

23. On Saturdays, Plaintiff typically works from 7:00 A.M. to 5:00 PM. He typically takes a 10 minute break in the morning and a 90 minute break in the afternoon.

24. On Sundays, Plaintiff typically works from 8:30 A.M. to 9:30 A.M. He then typically works from 4:00 P.M. to 5:30 P.M.

25. In addition to his regular work responsibilities during the day, Plaintiff remains available to respond to tenant emergencies at all hours, seven (7) days a week.

26. During the winter months when there is snow, Plaintiff salts and shovels the sidewalks immediately outside of and around the Buildings. Depending on the weather conditions, Plaintiff's workday may begin as early as 6:00 A.M. and end as late as 10:00 P.M.

27. To date, Defendants continue to employ Plaintiff to perform the superintendent work at the Buildings.

28. In addition to his superintendent work, Plaintiff undertook Projects for Defendants at Defendants' request on a contract basis. Such Projects included skilled plumbing work, tile work, opening up walls, refinishing plaster on walls and other specialized work. This work took place at the Buildings and other properties owned and/or managed by Defendants.

29. Also during his employment with Defendants, Plaintiff completed two major renovations of the basement apartment and the basement at 3288 Perry Avenue (the "Renovations") in addition to the other Projects he completed. The Renovations were completed at the request and for the benefit of Defendants.

30. Plaintiff personally performed work on the Renovations at night outside of his regular work hours. He also hired other qualified individuals to assist him with the Renovations and paid them directly.

**Plaintiff's Pay**

31. During Plaintiff's employment with Defendants, Defendants have paid Plaintiff a weekly salary of $220 for his superintendent work. He was also provided an apartment to reside in.

32.     Plaintiff completed the Projects in or around the Buildings and at other various sites each at the request of Defendants. Upon the completion of each of the Projects, Plaintiff submitted an invoice to Defendants describing the Projects he completed and the amount to be paid. The payment Plaintiff actually received would be at Mr. Roth's discretion as Mr. Roth would often unilaterally reduce the invoiced amount.

33.     In or about December 2016, Defendants stopped paying Plaintiff for the Projects. Until September 2017, Plaintiff continued to complete Projects as requested by Defendants without receiving pay from Defendants, and Plaintiff has stopped working on Projects since that time.

34.     Further, Defendants have not paid Plaintiff for the Renovations, even after Plaintiff's requests for payment.

**Illegal Deductions**

35.     At hiring, Defendants did not notify Plaintiff of any vacation or sick leave policy, and Plaintiff did not take time off for vacation. In or about 2012, Plaintiff requested and received one week of vacation per year. In or about 2015, Plaintiff requested additional vacation and started to take two weeks of vacation per year. During each vacation, Plaintiff paid, without reimbursement, for a qualified individual to cover the superintendent work he conducted for Defendants. Plaintiff paid such an individual amounts ranging from $200 to $400 for providing coverage for the week. Defendants were aware of and accepted these arrangements.

36.     Similarly, each time Plaintiff took time off from work due to illness, Plaintiff paid, without reimbursement, for a qualified individual to cover the superintendent work he conducted for Defendants. Defendants were aware of and accepted these arrangements.

37. On several occasions, the City of New York fined the Buildings for failing to comply with sanitation or other maintenance regulations. Defendants deducted these fines from the money Defendants owed to Plaintiff for work he had done on the Projects.

**Purported Termination of Plaintiff's Employment and Subsequent Housing Action**

38. In or about December 2016, Plaintiff requested that Defendants pay him for the Projects and Renovations he had undertaken at their request.

39. In or about January 2017, Plaintiff presented Defendants with the amount he calculated as his unpaid wages. Defendants threatened Plaintiff with litigation and said he "wouldn't get a dollar," or words to that effect.

40. In or about March 2017, Mr. Roth, on behalf of Defendants, told Plaintiff that Defendants no longer wanted him to work for them.

41. On or about April 17, 2017, Plaintiff filed a complaint for unpaid wages at the New York State Department of Labor. On or about April 24, 2017, Plaintiff was served with a Notice to Quit the basement apartment.

42. On or about June 15, 2017, C.P. Realty filed an eviction proceeding against Plaintiff in the Civil Court of the City of New York, County of Bronx, Housing Part F alleging that Plaintiff's employment with Defendants was terminated.

**Plaintiff's Continued Employment**

43. Plaintiff continues to reside in the basement apartment and perform his superintendent work as he has throughout the relevant time period. Defendants continue to pay Plaintiff his weekly wage of $220. Despite the alleged termination of his employment, there has been no interruption in Plaintiff's superintendent work nor Defendant's payment for this work during the relevant time period.

44.     Until around September 2017, Plaintiff continued to undertake the Projects for Defendants. Plaintiff stopped undertaking such Projects because Defendants have not paid him for his work on the Projects since in or about December 2016.

**Defendants' Failure to Provide Wage Statements**

45.     Plaintiff's paystubs do not accurately reflect the hours he works as required by NYLL § 195(3).

## STATEMENT OF CLAIMS

### First Claim: Minimum Wages Under the FLSA

46.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

47.     Throughout the relevant time period, Plaintiff was the employee of Defendants and Defendants were his joint employers within the meaning of the FLSA, 29 U.S.C. § 203(d).

48.     During the relevant time period, the federal minimum wage was $7.25 per hour, as codified by 29 U.S.C. § 206(a)(1)(c).

49.     Defendants willfully failed to pay Plaintiff the lawful minimum hourly wage for all hours worked, during the relevant time period.

50.     Defendants' knowing and deliberate acts are in direct contravention of 29 U.S.C. § 206(a)(1) and are actionable under 29 U.S.C. § 216(b).

51.     Accordingly, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages, liquidated damages and his reasonable attorneys' fees and costs.

## Second Claim: Overtime Wages under the FLSA

52. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

53. While employed by Defendants, Plaintiff routinely worked at least sixty three & ¼ (63.25) hours per week.

54. Defendants willfully failed to compensate Plaintiff at the overtime rate of at least one and one-half times the regular rate of pay for any hours he worked over forty (40) in a single week.

55. Defendants' knowing and deliberate acts are in direct violation of the 29 U.S.C. § 207(a)(1) and are actionable under 29 U.S.C. § 216(b).

56. Accordingly, pursuant to the FLSA, 29 U.S.C. § 216(b), Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime wages, liquidated damages and his reasonable attorneys' fees and costs of the action.

## Third Claim: Illegal Retaliation under the FLSA

57. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

58. Plaintiff repeatedly requested a higher wage for his superintendent work and payment for the Projects he completed.

59. As a result of his requests, Defendants willfully and deliberately retaliated against Plaintiff by notifying him of his termination, on or about April 13, 2017, and serving Plaintiff with a Notice to Quit the basement apartment.

60. Defendant's notice of termination directly violated FLSA, 29 U.S.C. § 215, which protects employees from retaliatory discharge for protected conduct.

61. As a result of the foregoing, Plaintiff has been injured, and Defendants owe Plaintiff reinstatement, back pay, liquidated damages, compensatory damages, attorneys' fees, and costs.

**Fourth Claim: Minimum Wages under the NYLL**

62. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

63. Throughout the relevant time period, Plaintiff was Defendants' employee and Defendants were Plaintiff's employers within the meaning of the NYLL § 2.

64. During the relevant time period, when Plaintiff was rendering typical services to Defendants as the superintendent or "janitor," his work was covered by the Minimum Wage Order for the Building Service Industry, 12 NYCRR Part 141, and subject to the unit rate for janitors in residential buildings. *See* 12 NYCRR § 141-1.2.

65. For janitors in residential buildings, from December 2010 to December 30, 2013, the state minimum wage was $4.85 per unit weekly ($291 per week, based on 60 units). From December 31, 2013 to December 30, 2014, the state minimum wage was $5.35 per unit weekly ($321 per week, based on 60 units). From December 31, 2014 to December 30, 2015, the state minimum wage was $5.85 per unit weekly ($351 per week, based on 60 units). From December 31, 2015 to December 30, 2016, the state minimum wage was $6.00 per unit weekly ($360 per week, based on 60 units). From December 31, 2016 to December 30, 2017, the state minimum wage is $7.35 per unit weekly ($441 per week, based on 60 units). From December 31, 2017 to the present, the state minimum wage is $8.65 per unit weekly ($519 per week, based on 60 units) for employers with 11 or more employees and is $8.00 per unit weekly ($480 per week, based on 60 units) for employers with 10 or less employees. 12 NYCRR § 141-1.2.

66. During the relevant time period, Defendants paid Plaintiff only $220 per week for his superintendent work.

67. Accordingly, pursuant to NYLL § 663, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages for the work performed by Plaintiff as the superintendent, liquidated damages, pre-judgment interest and reasonable attorneys' fees and costs of the action.

### Fifth Claim: Illegal Retaliation under NYLL

68. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

69. Defendants willfully and deliberately retaliated against Plaintiff by providing notice of his termination on or about April 13, 2017 after Plaintiff complained to Defendants regarding the unpaid wages and reimbursements for the Projects and Renovations. Defendants further retaliated by serving Plaintiff with a Notice to Quit the basement apartment.

70. This termination and subsequent service of Notice to Quit violated NYLL § 215 which protects employees from retaliatory discharge for protected conduct.

71. As a result of the foregoing, Plaintiff has been injured, and Defendants owe Plaintiff reinstatement, back pay, liquidated damages, attorneys' fees, costs, and pre-judgment interest.

### Sixth Claim: Illegal Deductions under NYLL

72. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if set forth herein.

73. Pursuant to NYLL § 193(1)(b), employers are prohibited from deducting from employees' wages unless such deductions are "expressly authorized in writing by the employee

and are for the benefit of the employee." Any deductions from employee wages are limited to the deductions enumerated in NYLL § 193(1)(b).

74. Further, pursuant to 12 NYCRR § 195-4.5, Defendants are prohibited from deducting losses, such as fines or penalties, incurred through the conduct of the employee. Also, under NYLL § 193(3)(a), Defendants may not require an employee to "make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages."

75. Defendants violated NYLL § 193(1)(b) and 12 NYCRR § 195 by unlawfully deducting the fines imposed by the City of New York for failure to comply with sanitation and other maintenance regulations from Plaintiff's pay for the Projects.

76. In violation of NYLL § 193(3)(a), Defendants did not reimburse Plaintiff for the payments he made to the qualified individuals that covered his superintendent work while Plaintiff was on vacation or unable to work due to illness.

77. As a result of the foregoing, Plaintiff is entitled to recover compensatory damages, pre-interest, and reasonable attorneys' fees and costs.

### Seventh Claim: Wage Statement Violations under NYLL

78. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

79. Defendants violated NYLL § 195(3) by not providing Plaintiff with accurate pay stubs with every payment of wages. Specifically, the pay stubs did not accurately report the hours worked for Defendants during each pay period.

80. Pursuant to NYLL § 198(1-d), Plaintiff is entitled to recover from Defendants damages of $250 per work day for the duration of Defendants' violations of NYLL § 195(3), up to $5,000, and his reasonable attorneys' fees and costs of the action.

### Eighth Claim: Breach of Contract

81. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

82. From about December 2016 through September 2017, Plaintiff performed numerous Projects, which were substantially distinct from Plaintiff's work as superintendent, at the request of Defendants and for the latter's benefit with the promise of payment upon the conclusion of such work.

83. Defendants have failed to pay Plaintiff for the completed Projects during this time period.

84. Plaintiff is therefore entitled to any and all compensatory damages flowing from Defendants' breaches of express contract.

### Ninth Claim: Unjust Enrichment and *Quantum Meruit* under New York Common Law

85. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

86. During Plaintiff's employment with Defendants, Plaintiff performed the Renovations at the request of and for the benefit of Defendants. Plaintiff rendered such services in good faith and expectation of payment.

87. The Renovations were substantially distinct from Plaintiff's work as superintendent so Defendants could not have reasonably assumed that the Renovations were rendered without expectation of pay in addition to his $220 weekly wage.

88. Plaintiff completed services for the benefit of Defendants, Defendants accepted his services and Plaintiff did not receive payment for his work. Plaintiff is entitled to the fair and reasonable value of his labor and services for the Renovations.

89. Equity and good conscience require Defendants to pay Plaintiff for unpaid compensation, interest, reasonable attorneys' fees and costs.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in his favor and against Defendants as follows, declaring or awarding:

a. Defendants' conduct complained of herein to be in violation of the FLSA and NYLL and the respective regulations thereunder;

b. unpaid minimum wages due under the FLSA;

c. unpaid overtime wages due under the FLSA;

d. damages for Defendants' illegal retaliation under FLSA, including but not limited to reinstatement;

e. unpaid minimum wages due under the NYLL;

f. damages for Defendants' illegal retaliation under NYLL, including but not limited to reinstatement;

g. damages for Defendants' illegal deductions under NYLL;

h. damages for violations of the wage statement requirement of the NYLL;

i. damages for Defendants' breach of contract;

j. damages for his uncompensated work, labor and services performed related to the Renovations under New York law;

k. liquidated damages pursuant to the FLSA and NYLL;

l. pre-judgment interest;

m. the costs of this action, together with reasonable attorneys' fees and costs; and

n. such other and further relief as the Court considers just and proper.

Dated: New York, New York
        Wednesday, February 28, 2018

Respectfully submitted,

*/s/ Young Woo Lee*
**THE LEGAL AID SOCIETY**
Seymour W. James, Jr., Attorney-in-Chief
Adriene Holder, Attorney-in-Charge, Civil Practice
Karen Cacace, Director, Employment Law Unit
Young Woo Lee, Supervising Attorney, Employment Law Unit
199 Water Street, Fl. 3
New York, New York 10038
Telephone:  (212) 577-3533
Email: YWLee@legal-aid.org

WHITE & CASE LLP
David Hille, Partner
1221 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 819-8200
Email: dhille@whitecase.com

*Attorneys for Plaintiff Yojani Batista*